WILLIAM H. MERRICK v. PETER MAYHUE.

*Justice's summons—Return—Non-suit—Affidavit for transcript of execution.*

The following return of service of a justice's summons is *prima facie* sufficient to give the justice jurisdiction: "I hereby certify that I have personally served the within summons on the within named defendant, by reading the same and by giving a copy, on the 5th day of August, 1874."

A justice's summons was made returnable at one o'clock in the afternoon. It was read to defendant and a copy given him, which, however, specified one o'clock in the forenoon as the time for appearance. Defendant appeared at one in the morning, got the justice out of bed, and in plaintiff's absence took a non-suit. But before the real time arrived he saw the original summons, which stated it correctly. *Held* that the non-suit was void.

Where a justice enters judgment as against Peter *Mayo* in a suit begun by process against Peter *Mayhue*, it is competent to amend the error by following the summons, and the defect is not fatal if there is no question of identity and the transcript of execution gives the name correctly.

An unsigned affidavit for a transcript of execution is valid if properly sworn to.

Error to Huron. Submitted Jan. 9. Decided Jan. 21.

REPLEVIN. Defendant appeals. The facts are stated.

*Winsor & Snover* and *H. B. Carpenter* for plaintiff in error. If a justice's summons is read to a defendant, it is sufficient service (Comp. L., § 5262; *Shaw v. Morehouse*, 3 Mich., 74), and the return showing service cannot be impeached and gives jurisdiction, *Clark v. Holmes*, 1 Doug. (Mich.), 398; *Facey v. Fuller*, 13 Mich.. 533; *N. Y. & E. R. R. Co. v. Purdy*, 18 Barb., 574. An affidavit is valid if it begins with the affiant's name (*Haff v. Spicer*, 3 Cai., 190), and appears to have been duly sworn to before a proper magistrate, *Jackson v. Virgil*, 3 Johns., 540; *Shelton v. Berry*, 19 Tex., 154; *Crist v. Parks*, id., 234; *Redus v. Wofford*, 4 Sm. & M., 579; *Bates v.*

*Robinson*, 8 Ia., 318. The identity of parties to a record may be proved when there is a variance in the names, *Reed v. Gage*, 33 Mich., 180; *Boyce v. Danz*, 29 Mich., 148; *Goodell v. Hibbard*, 32 Mich., 47.

*Geo. S. Engle* and *John C. Shields* for defendant in error. Mayhue and Mayo are no more *idem sonans* than William T. Johnson and Warren T. Johnson (*Foster v. Alden*, 21 Mich., 507), Edmund Darby and Edward Darby *Matthews v. Dickinson*, 7 Taunt., 399), McCann for Mc-Carn, and Tarbart for Tabart (*Bingham v. Dickie*, 5 Taunt., 814), and Couch for Crouch (*Whitwell v. Bennett*, 3 B. & P., 559), and there can be no judgment on a transcript against any one but the party who suffered judgment in the first instance, *Stephens v. Santee*, 51 Barb., 532; a statute for transferring a judgment must be strictly complied with, *Jewett v. Bennett*, 3 Mich., 200; *Peck v. Covell*, 16 Mich., 11.

GRAVES, J. Merrick was under-sheriff and received an execution for collection against Mayhue.

It was issued out of the circuit court on an entry of judgment therein in favor of one Thomas Snell and against defendant in error, and which entry was founded on a transcript made by Samuel T. Cantelon, a justice of the peace. He seized a pair of colts and some other animals on the execution and Mayhue instituted this action of replevin and retook the property. At the trial the only subjects of controversy were whether the judgment given by the justice in favor of Snell was void for want of jurisdiction, and if not, then whether the omission of the affiant's signature to the affidavit made to show that Mayhue had no goods and chattels in the county liable to execution, invalidated the transcript. The circuit judge instructed the jury that there was no valid judgment before the justice and directed a verdict in Mayhue's favor. Merrick brought error.

There is no occasion to inquire to what extent and in

what way a levy under a transcript execution may be assailed by objections to the proceedings before the justice. The circumstances of this case are such as to spare discussion on that subject.

The transcript was entitled "Thomas Snell vs. Peter Mayhue," and was in due form. The original summons issued by the justice on the 5th of August, 1874, and returnable "on the 15th of August, A. D. 1874, at one o'clock in the *afternoon*," was regular. It was returned personally served by the plaintiff in error. His certificate on the back was in these terms: "I hereby certify that I have personally served the within summons on the within named defendant, by reading the same and by giving a copy, on the 5th day of August, 1874." This contained the evidence of service to entitle the justice to act, and no one questions its *prima facie* sufficiency. Mayhue employed counsel to defend and delivered to his counsel a paper he represented to him as the same Merrick had given as a copy of the summons.

It is not needful to examine what is claimed to be a showing that this paper so handed to counsel was the same Merrick delivered as a copy of the original summons. Let the fact be conceded.

The paper contained a palpable error. It specified one o'clock in the forenoon of August 15 instead of one o'clock in the afternoon as the time for appearance. Mayhue's counsel taking this paper with him got the justice out of bed at midnight, and the form of calling the case was soberly gone through with at one o'clock in the morning, and an entry of non-suit made.

Of course this proceeding was void. The true time for appearance had not arrived, and this nocturnal manœuvre was without effect to anticipate it. The original summons containing the correct hour must have been read to Mayhue, and it would be going far to say that the error in the copy misled him and caused him to suppose the time for appearance had been fixed at one in the morning.

However this may be, the record establishes that if he was thus misled at the moment and caused to believe that the time specified in the copy was not a mistake, he was fully and regularly apprised and in due season to protect himself, that the time in the copy was incorrect, and that the true time was one o'clock in the afternoon. His counsel testifies that subsequent to the proceeding taken at one o'clock in the morning and in the same forenoon he saw the original summons and read it and saw it was returnable at one o'clock that afternoon. There was no want of opportunity, therefore, to appear in the case and make objections.

He knew the time given in the copy was a mistake on the part of the sheriff, and he was aware of the true time fixed for appearance. If entitled to rely on the accuracy of the copy of the summons in the first place, he could not continue his reliance so far as to disregard the suit entirely, and reserve his objections for a collateral proceeding, after having seen the original summons and ascertained the truth in due season to make all objections in the same case. · Whatever influence the defect in the service might have had under other circumstances, it became a mere irregularity.

It is claimed that the judgment as originally entered up by the justice was entitled "Thomas Snell vs. Peter *Mayo*" and not "Peter *Mayhue*," as in the transcript, and that this is a fatal objection.

The point is without merit. The record leaves no room for any question of identity in fact and the means were supplied to spell the name properly.

The first process was against Peter Mayhue, and if the entry made by the justice was not accurate it was competent to make it so by following the summons, and in making out the transcript he seems to have acted in that way.

The objection to the affidavit made preliminary to the transcript because the affiant failed to sign is overruled

by *Dickinson v. Simondson*, 25 Mich., 113. Besides the cases there cited, see *Soule v. Chase*, 1 Robertson, 222, and *In re Howard, In re Ashcroft*, L. R., 9 C. P., 347 : 9 Eng., 436. The case in Robertson has been reversed, but without affecting the point here.

There are no other questions deserving notice. The record shows that the court erred to the prejudice of plaintiff in error, and the judgment must therefore be reversed with costs and a new trial ordered.

The other Justices concurred.